UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

NEW YORK IMMIGRATION COALITION
COMMON CAUSE/NEW YORK, COMMUNITY
VOICES HEARD, CITIZEN ACTION OF NEW YORK,
and JENIFER BENN,

Plaintiffs,

   -against-                                **Civil Case No.:   1:19-cv-00920**

                                                          **DNH/CFH**

RENSSELAER COUNTY BOARD OF ELECTIONS;
JASON SCHOFIELD, in his official capacity as
Commissioner of Rensselaer County Board of Elections;
STEVEN MCLAUGHLIN, in his official capacity as
Rensselaer County Executive; FRANK MEROLA, in his
official capacity as Rensselaer County Clerk; and
MICHAEL STAMMEL, in his official capacity as
Chairperson of the Rensselaer County Legislature,

Defendants.

_____

**MEMORANDUM OF LAW IN SUPPORT OF
COUNTY DEFENDANTS' MOTION PURSUANT TO
FRCP 12(b)(1) and 12(b)(6)**

_____

DATED:      August 19, 2019

Gregg T. Johnson Bar Number 506443
Attorneys for Defendants
JOHNSON & LAWS, LLC
648 Plank Road, Suite 204
Clifton Park, New York 12065
Tel:   518-490-6428
Fax:   518-616-0676
Email: gtj@johnsonlawsllc.com

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

BRIEF FACTUAL STATEMENT ..........................................................................2

LEGAL ARGUMENT..............................................................................................4

      A.      The single incident event upon which Plaintiffs based their claims-
the information sharing idea contained in the July 18, 2019
press release- merely constitutes protected speech by public
officials responding to the public policy implications of state
and local legislative activity..................................................................4

      B.      As a Rensselaer County Board of Elections Commissioner,
Jason Schofield has Affirmative Duties Under State Law to
Protect the Rights of Citizens to Vote and Maintain
Public Voter Registration Records for Qualified Voters .......................6

      C.      This Court Does Not Have Jurisdiction
Over Plaintiffs' Legally Infirm Claims.................................................7

      D.      Applicable Standards of Review............................................................8

POINT I -      BECAUE OF PLAINTIFFS' LACK OF STANDING,
THEIR CLAIMS MUST BE DISMISSED AS A
MATTER OF LAW................................................................................9

POINT II -     SINCE PLAINTIFFS' CLAIMS ARE NOT RIPE FOR
ADJUDICATION THIS COURT MUST DECLINE TO
EXERCISE JURISDICTION ..............................................................15

POINT III -    THE ABSENCE OF ANY ACTION COGNIZABLE
UNDER THE VRA OR "STATE ACTION" REQUIRES
DISMISSAL OF PLAINTIFFS' SECTION 1983 CLAIM ..................17

POINT IV -    PLAINTIFFS' FAILURE TO PLEAD A *MONELL* CLAIM
REQUIRES DISMISSAL FO THE COMPLAINT...............................18

POINT V -    TO THE EXTENT THE COURT DECLINES TO
DISMISS THE COMPLAINT IN ITS ENTIRETY,
THE CASE CAPTION SHOULD BE CORRECTED
AND PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES
MUST BE DISMISSED ......................................................................19

CONCLUSION.......................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. City of Syracuse,*
    2018 U.S. Dist. LEXIS 210687 (N.D.N.Y. 2018) ........................................8, 18, 19

*Brandon v. Holt,*
    469 U.S. 464 (1985).......................................................................................1, 20

*Brennan v. City of White Plains,*
    67 F. Supp. 2d 362 (1999) ...................................................................................20

*Chabad Lubavitch of Litchfield County, Inc. v. Lithcfield Historic Dist. Comm'n.,*
    768 F.3d 183 (2nd Cir. 2014)...............................................................................10

*City of Newport v. Fact Concerts, Inc.,*
    453 U.S. 247 (1981)..............................................................................................20

*De Ratafia v. County of Columbia,*
    2013 U.S. Dist. LEXIS 138169 (N.D.N.Y. 2013) ...................................................1

*De Ratafia v. County of Columbia,*
    2013 U.S. Dist. LEXIS 138169 (N.D.N.Y. 2013) .................................................20

*Faulkner v. Sadowski,*
    486 f. Supp. 1261 (S.D.N.Y. 1980) .......................................................................5

*Gentile v. Republic Tobacco Co.,*
    No. U.S. Dist. LEXIS 18667, 1995 WL 743719 (N.D.N.Y. 1995) .......................18

*Koziol v. Hanna,*
    107 F. Supp. 2d 170 (N.D.N.Y. 2000)..............................................................11, 12

*Krause v. Buffalo & Erie County Workforce Dev. Censortium, Inc.,*
    426 F. Supp. 2d 68 (W.D.N.Y. 2005) .....................................................................5

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)......................................11

*Martin v. Hellmich,*
    2017 U.S. Dist. LEXIS 35761 (N.D.N.Y 2017) .......................................................3

*Monnell v. New York City Dep't of Soc. Serv.,*
    436 U.S. 658 (1978)............................................................................................1, 20

*Monreal v. New York*,
    2012 U.S. Dist. LEXIS 91281 (N.D.N.Y. 2012) ....................................................3

*Nat'l Org. for Marriage, Inc. v. Walsh*,
    *714 F.3d 682 (2d Cir. 2013)* .........................................................................15

*Nation v. Tanner*,
    108 F. Supp. 3d 29 (N.D.N.Y. 2015)................................................................16

*Olagues v. Russoniello*,
    770 F.2d 791 (9th Cir. 1985) .........................................................................17

*Pincham v. Illinois Judicial Inquiry Bd.*,
    681 F. Supp. 1309 (Ill. N.D. 1988) .................................................................17

*Rehab. Support Servs. v. Town of Esopus*,
    226 F. Supp. 3d 113 (N.D.N.Y. 2016) ..............................................................3

*Rivendell Winery, LLC v. Town of New Paltz*,
    725 F. Supp. 311 (N.D.N.Y. 2010) ............................................................15, 16

*Rounseville v. Zahl*,
    13 F.3d 625 (2d Cir. 1994)...........................................................................18

*Seale v. Madison Cnty*,
    929 F. Supp. 2d 51 (N.D.N.Y. 2013) ...............................................................3

*Sharapata v. Town of Islip*,
    56 N.Y.2d 332 (1982) ................................................................................20

*Strubel v. Comenity Bank*,
    842 F.3d 181 (2d Cir. 2016)...........................................................................9

*Thoreson v. Penthouse Intl.*,
    80 N.Y.2d 490 (1992) ................................................................................20

*Town & Country Adult Living, Inc. v. Village/Town of Mt. Kisco*,
    2019 U.S. Dist. LEXIS 50676 (S.D.N.Y. 2019)...............................................15

*United States v. Leflore County*,
    371 F.2d 368 (5th Cir. 1967) ........................................................................17

*Willmington v. County of Albany*,
    593 F. Supp. 2d 446 (N.D.N.Y. 2006) ............................................................18

*Wise v. Battistoni*,
    U.S. Dist. LEXIS 18864, 1992 WL 380914 (S.D.N.Y. Dec. 10, 1992) ..................18

*Young Advocates for Fair Educ. V. Cuomo*,
    359 F. Supp. 3d 215 (2019) ...............................................................12, 13, 14

**Federal Statutes**

*42 U.S.C.* §1983 ...........................................................................................1, 17, 18

*18 U.S.C.* § 611 ......................................................................................................9

*CPLR Article* 78 ..................................................................................................16

*Fed. R. Civ. P.* 12(b) ..........................................................................................1, 8

*Fed. R. Civ. P.* 12(b)(1) .......................................................................................13

*Fed. R. Civ. P.* 12(b)(6) .........................................................................................3

*Fed. R. Civ. P.* 12(c) ..............................................................................................3

U.S. Const. amend I ............................................................................................1, 4

U.S. Const. amend XIV ...........................................................................................1

U.S. Const. art III ............................................................................................8, 11

*Voting Rights Act* §11(b) (52 U.S.C. §10307(b)) .............................................1, 17

**State Statutes**

*Driver's License Access and Privacy Act*, S. 1747B (2019)...................................2

*Freedom of Information Law* .....................................................................2, 5, 10, 11

*N.Y. Election L.* § 3-212(3) ....................................................................................5

*N.Y. Election L.* § 5-102(1) ................................................................................6, 9

*N.Y. Election L.* § 5-228 ........................................................................................7

*N.Y. Election L.* § 5-602 (1),(3) ............................................................................5

*N.Y. Election L.* § 5-604(1) ...................................................................................7

*N.Y. Election L.* § 5-604(2)* ..................................................................................7

*N.Y. Election L.* § 5-606 ........................................................................................7

*N.Y. Election L.* § 5-700........................................................................................6

## PRELIMINARY STATEMENT

Defendants, Rensselaer County Board of Elections (hereinafter referred to as "County"), Jason Schofield, Steven McLaughlin, Frank Merola, and Michael Stammel[1] (collectively referred to as "County" for purposes of this motion), by and through their counsel *(Johnson & Laws, LLC)*, submit this memorandum in support of the County Defendants' Rule 12(b) motion to dismiss Plaintiffs' Complaint (Dkt. No. 1) in its entirety.

The four Plaintiffs who commenced this action on July 26, 2019 include one natural person (Jennifer Benn, hereinafter "Benn") and the following four advocacy organizations: *NY Immigration Coalition* (hereinafter "NYIC"), *Common Cause / New York* (hereinafter "CCNY"), *Community Voices Heard* (hereinafter "CVH") and *Citizen Action of New York* (hereinafter "CANY"). Plaintiffs' Complaint advances the following two claims against County Defendants: 1) alleged violation of Section 11(b) of the Voting Rights Act *(52 U.S.C. §10307(b))*; and 2) a §1983 claim alleging violations of Plaintiffs' First and Fourteenth Amendments to the U.S. Constitution.

Remarkably, Plaintiffs' Complaint contains no factual allegations that the County (or any of the County officials they named as Defendants) took any state action such as passing a law; passing a resolution; establishing a policy; or taking any official or state action whatsoever. Rather the Complaint identifies a July 18, 2019 press release (hereinafter "Release") which attributes statements to four County officials. Yet the Complaint does not contain any factual allegation that

---

[1] While Plaintiffs choose to name four County Officials and the County board of Elections, the Complaint makes clear that they are only suing Messrs. Schofield, McLaughlin, Merola and Stammel in their "official capacity[ies]" (Dkt. No. 1 ¶¶ 36-39) which, according to settled law, means that the County is the Defendant and naming the four officials is redundant. *See: Monnell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 690 (1978); *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985); *Hulett v. City of* Fowler, 253 F.Supp. 3d 462, 498-99 (N.D.N.Y. 2017), and *De Ratafia v. County of Columbia*, 2013 U.S. Dist. LEXIS 138169**20-21 (N.D.N.Y. 2013).

1

any such official nor the County actually took an action or refrained from taking actions they were required by law to take, which implicate any of the federal rights Plaintiffs allege were violated. Rather, Plaintiffs' Complaint consists of legal conclusions, public policy arguments, accusations against non-parties (e.g. "ICE") and speculation. As demonstrated herein, as a matter of law, Plaintiffs' Complaint must be dismissed because: (a) Plaintiffs lack standing to invoke this Court's jurisdiction; (b) Plaintiffs fail to present a ripe controversy; and (c) there is no "state action" County policy, custom or practice that could support their claims.

## BRIEF FACTUAL STATEMENT

In recognition of the procedural posture of this action and the present 12(b) motion, Defendants offer the following brief summary of the relevant factual context surrounding this action, including: the factual allegations contained in Plaintiffs' Complaint; the factual allegations conspicuously missing from Plaintiffs' Complaint; and the public legislative and litigation events which preceded and prompted Plaintiffs' ill-conceived lawsuit.

- In 1977 New York's Freedom of Information Law (hereinafter "FOIL") became effective which granted access to most "public records" maintained by the state, Counties and political subdivisions.

- On June 17, 2019, New York's Governor (Andrew Cuomo) signed into law the *Driver's License Access and Privacy Act*, sometimes referred to as the "Green Light Law" (hereinafter "GLL") which will take effect in December 2019 and, among other things, enables undocumented immigrants residing in New York to obtain (non-commercial) drivers licenses while restricting state DMV officials from sharing voter registration information (gathered under the Federal Motor Voter Law) with immigration agencies (e.g., ICE).

- On July 8, 2019, Erie County Clerk (Michael Kearns) commenced a federal action in the U.S.D.C. for the W.D.N.Y. against New York State and Governor Cuomo alleging that the GLL is unconstitutional and otherwise preempted by existing federal law (1:19-CV-00902 (EAW)).

- On July 24, 2019, the Rensselaer County Clerk (Frank Merola), (also named as a Defendant in the instant action), commenced a federal action in this Court against *inter*

*alia*, New York State and Governor Cuomo alleging the at the GLL is unconstitutional and otherwise preempted by existing federal law (1:19-CV-00899 (GLS/TWD)).

- On July 18, 2019 Rensselaer County officials issued a press release in response to the Governor signing of the GLL and City of Troy's "Sanctuary City" resolution (that was vetoed by the Mayor on July 12, 2019). The July 18th Press Release did not reference or mention any County law, County Legislature resolution or formal County policy (Schofield Declaration; 3 Ex. A).[2]

- The Complaint contains no allegations that Plaintiff Benn had any contact with the Department of Motor Vehicles office located in Rensselaer County, the County's Board of Elections, any named Defendant in this action or any Rensselaer County official since July 18, 2019.

- The Complaint contains no factual allegations that since July 18, 2019 any information was transferred from the Rensselaer County Board of Elections or any named Defendant to U.S. Immigration and Customs Enforcement (hereinafter "ICE").

- The Complaint contains no factual allegations that any person residing in Rensselaer County who lawfully registered to vote at a DMV office became the subject of a ICE investigation, and/or removal or deportation action.

- The Complaint contains no factual allegations that, prior to the Release, the voter registration data referenced in the press release was not readily available to law enforcement agencies, ICE or the public at large pursuant to New York State law.

- The Complaint contains no factual allegations that accessibility or availability of voter registration lists, which the Rensselaer County Board of Elections receives from New York State, changed as a result of the Release.

---

[2] As this Court has observed, "[g]enerally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided to the parties), (3) documents that although not incorporated by reference, are 'integral' to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." *Rehab. Support Servs. v. Town of Esopus*, 226 F. Supp. 3d 113, 124 (N.D.N.Y. 2016); *Seale v. Madison Cnty*, 929 F. Supp. 2d 51, 63-65 (N.D.N.Y. 2013); *Monreal v. New York*, 2012 U.S. Dist. LEXIS 91281, 11 (N.D.N.Y. 2012); *Martin v. Hellmich*, 2017 U.S. Dist. LEXIS 35761, 18 (N.D.N.Y 2017).    Additionally, the Second Circuit noted that "'[i]n most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason – usually because the document read in its entirety would undermined the legitimacy of the plaintiff's claim – was not attached to the complaint.'" *Id.* (quoting *Global Network Commc'ns*, 458 F.3d 150, 157 [2d Cir. 2006]). In the present case the July 18, 2019 Press Release, and the context of same, are referred to in the Complaint, quoted by the Complaint and form the very basis for Plaintiffs' two claims. Thus, this Court can and should review the entire Press Release to fully understand and evaluate the Complaint.

- The only allegations contained in the Complaint supporting Ms. Benn's subjective fears (as opposed to facts) which she claims prevents her from visiting her local DMV office, registering to vote as a citizen or freely exercising her right to vote.

## LEGAL ARGUMENT

**A.**   ***The single incident upon which Plaintiffs based their claims- the information sharing idea contained in the July 18, 2019 press release- merely constitutes protected speech by public officials responding to the public policy implications of state and local legislative activity.***

As reflected by the very first sentence of the July 18, 2019 press release (hereinafter "Release"), which is the only fact Plaintiffs' Complaint attributes to the County Defendants, the statements contained in the release were made *"[i]n response to State Legislation deceptively referred to as the 'Green Light Bill' …a and a recent attempt to make the City of Troy a sanctuary city…"* (Ex. A) It is axiomatic that public officials like Messrs. McLaughlin, Merola, Stammel and Schofield have the right under the First Amendment to speak out concerning public policy matters which are the subject of the press release. As paragraphs "53" through "54" of Plaintiffs' Complaint confirm, the Constitutionally protected statements contained in the Release were not the result of any County legislative action, did not have the force of law, were not actions attributable to the County and were made mostly[3] by public officials who do not even control or administer the voter registration information that was the subject of the Release. (Dkt. No. 1 ¶¶ 53-55). The public policy debate that prompted the release and the content of the Release itself make clear that the statements contained therein were simply constitutionally protected statements by four County officials about an ongoing public policy debate which were made directly in response to legislative activity by the New York State and the City of Troy. Such statements did

---

[3] With the exception of Mr. Schofield whose office receives and administers the voter registration information discussed in the Release.

not constitute actionable conduct that provides Plaintiffs' standing or supports federal claims cognizable before this Court.

While the Complaint in this action suggests that the information sharing idea contained in the Release (i.e. making available to ICE the names and addresses of newly registered voters in the County upon the state sending the County Board of Elections such information) constituted a new event or a County policy; the well-settled law applicable to such publicly available information exposes the fallacy of that suggestion. For decades before the Release was issued, such voter registration information was contained as "public records" under New York's Freedom of Information Law[4] and state law plainly makes such records available to any person or organization- including Plaintiffs or ICE. For example, New York's Election Law reads in relevant parts:

> *The records of the board [of elections], and all papers and books filed in its office are public records.*

*N.Y. Election L.* § 3-212(3).

> Lists of registered voters; publication of.
>
> 1. After the last day of local registration...the board of elections shall cause to be published a complete list of names and residence addresses of the registered voters for each election district over which the board has jurisdiction.
>
> \*       \*       \*
>
> 3. The board of elections shall prepare such number of copies of such lists...and shall keep at least five copies for public inspection at each main office or branch of the board.

*N.Y. Election L.* § 5-602 (1),(3).

---

[4] For decades, federal and state courts, as well as New York's Committee on Open Government have issued Opinions recognizing and confirming that lists containing such voter registration information is freely available under FOIL. *Krause v. Buffalo & Erie County Workforce Dev. Censortium, Inc.,* 426 F. Supp. 2d 68, 89-90 (W.D.N.Y. 2005); *Ladner City of New York,* 20 F. Supp. 2d 508, 519 (E.D.N.Y. 1998); *Faulkner v. Sadowski,* 486 f. Supp. 1261, 1263 (S.D.N.Y. 1980); *N.Y. Dep't of State, Comm. Open Gov't,* FOIL-AO-## 9183 (1995), 8591 (1995), 9814 (1996), 12067 (2000).

Plaintiffs have not and cannot allege that the voter registration data referenced in the Release was anything other than publicly available before the date of the Release. Similarly, Plaintiffs have not and cannot allege that the voter registration data referenced in the Release was not readily available to law enforcement agencies (including ICE) before the date of the Release. Thus, the constitutionally protected statements constituting the Release, including those statements about making public records available to ICE did not even constitute a change in the status or availability of such public records. Public statements by County officials that they <u>may</u> send to ICE records (which the public and ICE already had access to for decades before such statements) simply cannot suffice as an action or "state action" that invokes this Court's jurisdiction or supports a federal action.

**B.**     ***As a Rensselaer County Board of Elections Commissioner, Jason Schofield has Affirmative Duties Under State Law to Protect the Rights of Citizens to Vote and Maintain Public Voter Registration Records for Qualified Voters.***

It is beyond dispute that in his capacity as an Elections Commissioner, Jason Schofield has affirmative duties to receive, collect, review, maintain and publish public voter registration data pursuant to New York State law. As the County's Board of Elections website states:     *"The objective of the Board of Elections is to ensure that all qualified voters have the opportunity to exercise his/her right to vote in all elections held in Rensselaer County."* *https://www.rensco.com/departments/board-of-elections.* This general policy statement by the County is of course grounded in state Election Law which provides in relevant part that *"[n]o person shall be qualified to register for and vote at any election unless he is a citizen of the United States..." N.Y. Election L.* § 5-102(1)*.* New York's Election Law further directs that *"...board of elections shall permit only those persons to register or to remain registered who have the qualifications prescribed by this article." N.Y. Election L.* § 5-700*.* Moreover, the affirmative

6

duties of County Boards of Elections include, but are not limited to: collecting and certifying voter registration information (*N.Y. Election L.* § 5-228)*;* publishing complete lists of registered voters *(N.Y. Election L.* § 5-604(1))*;* certifying and sending to the state board of elections lists of registered voters *(N.Y. Election L.* § 5-604(2)*;* and certifying the correctness of voter registrations and publishing same to voters upon request *( N.Y. Election L.* § 5-606)*.* Thus, to the extent Plaintiffs' liability theories in this action seek to restrict the County or the County Board of Elections from taking any lawful action that would promote the registration of only qualified voters, such claims seek to have this Court interfere with their affirmative duties as prescribed by New York State law.

**C.      *This Court Does Not Have Jurisdiction Over Plaintiffs' Legally Infirm Claims.***

The fundamental infirmity of Plaintiffs' Complaint is the fact that Plaintiffs' two liability claims are dependent upon speculation and an assumption that federal law enforcement officials (namely ICE) are too incompetent or corrupt to follow and/or implement federal law. In essence, Plaintiffs' Complaint asks this Court to adopt their assumptions that ICE is incapable or unwilling to adhere to federal law, and thus their suspicions about ICE are an adequate substitute for actual wrongdoing. Moreover, Plaintiffs' liability theories ask this Court to take yet another gigantic leap and <u>assume</u> that Rensselaer County citizens who have every right to register to vote are subjectively going to engage in the paranoid idea that their legitimate act of registering to vote – an activity that does not require disclosure of familial information – is going to trigger an illegitimate ICE investigation of them or their family members who may be in this Country unlawfully. As for Plaintiff Benn, assuming her factual allegations to be true – as this Court is obliged to do at this stage of the action – there is absolutely nothing in the Release that objectively inhibits Ms. Benn's opportunity to register to vote and proceed to exercise her right to vote. In

fact, to the extent any information sharing between the County and ICE occurred and lead to the discovery of voter fraud (e.g. noncitizens registering to vote and voting in state or federal elections) and the law was followed, Ms. Benn's right to vote and have her vote counted (and not diluted) would actually be promoted and protected by the statements in the Release.

While the county Defendants are mindful of the ongoing national debate over illegal immigration, Plaintiffs' present action seeking to have this Court enter the political fray and provide advisory or political opinions is simply contrary to the functions of this Court under Article III of the U.S. Constitution.

**D.**   *Applicable Standards of Review*

As this Court recently framed the legal standard applicable to motions under Rule 12(b):

> To survive a Rule 12(b)(6) motion to dismiss, the [f]actual allegations must be enough to raise a right to relief above the speculative level. *Ginsburg v. City of Ithaca,* 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Although a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief', *FED. R. CIV. P.* 8(a)(2), more than mere conclusions are required. *Id.* Indeed, [w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). Dismissal is appropriate only where plaintiff has failed to provide  some basis for the allegations that support the elements of his claims. *Id.*; *see also Twombly,* 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face").

*Alexander v. City of Syracuse,* 2018 U.S. Dist. LEXIS 210687 (N.D.N.Y. 2018).

As this Court also reasoned in *Alexander* when a Complaint fails "to connect his various theories of liability to the particular defendant or defendants allegedly responsible for each violation" - as in the case in this action – it results in a waste of judicial resources. *Id,* *8.

## POINT I

## BECAUSE OF PLAINTIFFS' LACK OF STANDING, THEIR CLAIMS MUST BE DISMISSED AS A MATTER OF LAW

As a threshold matter, Plaintiffs' lack of standing which precludes this Court from exercising jurisdiction over the Complaint and compels dismissal of same.   As the Court of Appeals for the Second Circuit recently noted: "*[B]ecause standing is necessary to [the Court's] jurisdiction, [the Court is] obliged to decide the question at the outset.*" *Strubel v. Comenity Bank*, 842 F.3d 181, 187 (2d Cir. 2016)

It is clear from a plain reading of the Complaint that Plaintiffs' lack standing before this Court. First, none of the Plaintiffs are referenced or have any unique connection to the Release. The Release by the County Defendants did not refer to any Plaintiff nor any group of individuals Plaintiff's claim to serve or be related to. The organizational Plaintiffs each describe themselves as educational and advocacy groups who are seeking to enhance the lives of state residents, including specific groups.   However, none of the organizational Plaintiffs purport to represent or advocate for non-citizens who have violated election laws or plan to unlawfully register to vote and/or engage in fraudulent voting practices.[5] (Dkt. No. 1 ¶¶ 11, 15-27) Similarly, Plaintiff Benn affirmatively alleges that she is a citizen who meets all of the qualifications necessary to register to vote and engage in voting. (Dkt No. 1 ¶ 28)  Accordingly, even assuming *arguendo* that: sharing County voter registration information with ICE actually occurred[6], assuming that such information sharing constituted a change in the accessibility of such data[7], assuming that such information sharing prompted an investigation by ICE, and assuming ICE took such action towards individuals

---

[5] The act of non-citizens who register and vote in states and federal elections is a crime. 18 USC § 611; *N.Y. Election L.* §§ 5-102(1), 17-104; 17-168.
[6] That has not yet occurred. (Schofield Decl. )
[7] As discussed *supra,* such records and information have historically and remain publicly available.

who violated federal and state election laws- none of the Plaintiffs' nor the people they claim to advocate for would be impacted. The fact that Plaintiffs, like millions of other Americans, might have an interest in, or strong feelings about, the competing public policy implications of information sharing between federal state and local governments, simply does not confer standing upon Plaintiffs. Moreover, neither Plaintiffs' opinions or criticism about ICE nor the paranoid notion that ICE might act unlawfully in a particular instance, confers standing upon Plaintiffs.

In *Chabad*, the Court of Appeals further explained:

> The Supreme Court has recently clarified the distinction between Article III standing — which is a prerequisite to the invocation of federal court jurisdiction — and what has been referred to as "statutory standing" — which has at times been held to be jurisdictional and at others nonjurisdictional. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 134 S. Ct. 1377, 1386-88, 188 L. Ed. 2d 392 & n.4 (2014). Under Article III's "case" or "controversy" requirement, a party invoking federal court jurisdiction must demonstrate that he has "suffered or [is] imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Id*. at 1386 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992))

*Chabad Lubavitch of Litchfield County, Inc. v. Lithcfield Historic Dist. Comm'n.,* 768 F.3d 183, 200-201 (2nd Cir. 2014).  The Complaint in this action clearly does not include any well-plead factual allegations that any Plaintiff has or imminently will suffer a particularized injury. Remarkably, a recent August 16, 2019 new article (by the Times Union) reported that the NYCLU recently made a FOIL request of Rensselaer County seeking to obtain copies of any voter registration information produced by the County to ICE, thereby confirming the common knowledge reality that such public records are available to any person or organization (including ICE and the NYCLU)[8]. The article also confirms Mr. Schofield's Declaration that no such

---

[8] https://m.timesunion.com/news/article/NYCLU-says-Rensselaer-County-Republicans-seeking-14337218.php

document shave actually been delivered to ICE and further underscores the fact that Plaintiff's speculative liability theory fails establish that any Plaintiff has or will imminently suffer a particularized injury. *Id.* Moreover, the Complaint contains no well plead factual allegations that the Release could be fairly traceable to any such injury in fact.

Importantly, Article III standing is not only a threshold issue that defines this Court's jurisdiction (or lack thereof), the U.S. Supreme Court has made clear that standing is *"a principle fundamental to the separate and distinct constitutional role of the* [judiciary] *-- one of the essential elements that identifies those "Cases" and "Controversies" that are the business of the courts rather than of the political branches." Lujan v. Defenders of Wildlife, 504 U.S. 555, 576 (1992)*

As this court stated in *Koziol v. Hanna:*

> Like all motions brought pursuant to *Fed. R. Civ. P.* 12(b), the court must assume all the allegations in the complaint are true during a challenge to standing. *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). There are three requirements for standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992). First, the plaintiff must have suffered an 'injury in fact'--an invasion of a legally protected interest. *Id.* This injury must be concrete and particularized. *See id.; Allen v. Wright*, 468 U.S. 737, 756, 82 L. Ed. 2d 556, 104 S. Ct. 3315 (1984). In other words, the injury must affect the plaintiff in a personal and individual way. *Defenders of Wildlife,* 504 U.S. at 560 n. 1. The injury must also be actual or imminent, and not merely conjectural or hypothetical. *See id.* At 560; *Whitmore v. Arkansas*, 495 U.S. 149, 155, 109 L. Ed. 2d 135, 110 S. Ct. 1717 (1990). Second, the conduct complained of must cause the injury. The injury has to be fairly . . . traceable to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court. *Defenders of Wildlife,* 504 U.S. at 560 (quoting *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41-42, 48 L. Ed. 2d 450, 96 S. Ct. 1917 (1976)). Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38).

*Koziol v. Hanna,* 107 F. Supp. 2d  170, 176 (N.D.N.Y. 2000).  Even the most generous reading of Plaintiffs' Complaint makes clear that their "injury theory" is based upon multiple levels of

11

speculation. Plaintiffs' Complaint before this Court clearly fails to establish any of the three Constitutional requirements for standing. As discussed above, Plaintiffs have not suffered any injury in fact as a result of the July 18th Press Release. Moreover, the future "injury" Plaintiffs fear and speculate about are most certainly not fairly traceable to the Press Release. Rather, connecting the Press Release to Plaintiffs' fears of speculative consequences requires this Court to not only engage in several levels of speculation but also to assume a federal law enforcement agency (i.e. ICE) will disregard federal law and act unlawfully. In addition, no remedy that this Court could grant in this action would prevent or redress the parade of horribles which Plaintiffs speculate might come to pass if Rensselaer County were to affirmatively send to ICE public records that are, and have always been (as long as ICE has existed), available to all interested law enforcement agencies (including ICE). As this Court made clear in *Koziol*: "It is not enough to have some interest in the controversy, an imminent, concrete and particularized injury is necessary." *Koziol,* at 178.

As to the organizational Plaintiffs, they too must allege facts that support Constitutional standing. As the District Court for the Southern District of New York recently held:

> The requirements for standing are well-settled. An organization may sue in its own right to vindicate whatever rights and immunities the [organization] itself may enjoy. *New York Civil Liberties Union v. New York City Transit Authority,* 684 F.3d 286, 294 (2d Cir. 2012) (citing *Warth v. Seldin,* 422 U.S. 490, 511, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)). The requirements for organizational standing are the same as those for an individual plaintiff: the plaintiff must demonstrate [(1)] an 'actual and imminent, not conjectural or hypothetical' threat of a 'concrete and particularized' injury in fact [(2)] that is 'fairly traceable to the challenged action of the defendant' and that [(3)] a favorable judicial decision will likely prevent or redress. *Id.* (quoting *Summers v. Earth Island Inst.,* 555 U.S. 488, 493, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009)); *see also Lujan,* 504 U.S. at 560-561.

*Young Advocates for Fair Educ. V. Cuomo,* 359 F. Supp. 3d 215, 230 (2019). Judge Glasser's extensive standing analysis in his recent decision in *Young Advocates for Fair Educ. v. Cuomo*

*(359 F. Supp 3d 215 (E.D.N.Y. 2019))* provides clear guidance as to why these Plaintiffs' lack standing to invoke this Court's jurisdiction. That case involved a non-profit advocacy group (much like the organizational Plaintiffs in this action) known as "YAFFED" which advocated for improved education among Hasidic Jewish students which commenced a federal action challenging New York's "Felder Amendment" (an actual legislative action) that YAFFED alleged would lead to less rigorous secular education among Hasidic Jewish students attending private schools. *Id.*

The District Court granted the state's Rule 12(b)(1) motion to dismiss YAFFED's claims based on their lack of standing and, alternatively, the absence of a ripe controversy. *Id,* at 238. Following the Court's thorough analysis of the constitutional standing requirements and the elements required for standing, the Court in YAFFED specifically analyzed the concept of "organizational standing" advocated by agencies such as Plaintiff in the instant case and rejected the same "diversion of resource" theory which Plaintiff's in the instant case appear to advance in their Complaint. *Id.* at pp. 230-38. Rejecting the Plaintiff's diversion of resources theory- that were virtually identical to the instant organizational Plaintiffs' allegations in this action- the Court in YAFFED reasoned:

> YAFFED primarily argues that it has standing because it has spent significant effort opposing the Amendment… and thereby shift[ed] valuable resources away from its traditional advocacy and education efforts…. However, if the Court were to accept this argument, it would be difficult to conceive of a case in which an organization or individual would not have standing to challenge a statute that they find politically or socially disagreeable.
>
> *        *        *
>
> If any plaintiff with a strong objection to a statute could manufacture standing by spending time and money opposing that very statute—and then arguing that the expenditure of that time and money was itself an injury—there would be no real constraint upon standing at all, except perhaps the size of the plaintiff's bank account. This would conflict with the Supreme Court's admonition that the federal judiciary not be

> converted into publicly funded forums for the ventilation of public
> grievances. *Valley Forge*,454 U.S. at 473.

*Id.,* p. 231.

Critical to the instant case where the organizational Plaintiffs are admittedly advocacy and/or educational groups (Dkt. No. 1 ¶¶ 11, 15-27)[9], as distinguished from "direct service groups" [10], the Court in YAFFED explained:

> …an organization whose primary endeavor is to change or enforce the
> law, whether by communicating directly with government officials,
> community leaders, or the public, occupies no position different from
> that of a concerned citizen. And whatever else may be said of the
> standing doctrine, it clearly forbids citizen suits. While the distinction
> between social services and political activism may sometimes appear
> tenuous, *see American Soc. for Prevention of Cruelty to Animals*, 659
> F.3d at 27, it is also the most rational way to reconcile our precedents
> within the clear limitations that the Supreme Court has placed on Article
> III Standing.

*Id.*, p. 235.   Similarly, irrespective of how strongly the organizational Plaintiffs feel about the public policy implications of information-sharing between governmental agencies, their interest level does not afford them standing to bring the instant action.

Similarly, as to Plaintiff Benn, her affirmative allegations that she is eligible to register and vote makes clear that she has not, and will not, suffer any particularized injury that is traceable to the July 18, 2019 Press Release.

---

[9] As the website of the organizational Plaintiffs clearly reflect that their stated missions and purposes are advocacy of certain public policy agenda and legislation and education: https://www.nyic.org/about-us/; https://www.commoncause.org/new-york/about-us/;   https://www.commoncause.org/new-york/about-us/emerging-leaders/;  https://www.cvhaction.org/; https://www.cvhaction.org/what-we-do; https://citizenactionny.org/about

[10] The Court in YAFFED Court critically distinguished between groups that are in the business of directly providing legal or social services from organizations such as the Plaintiffs in this case which involve research, advocacy, litigation, and education aimed at public awareness and influencing public policy. *Id.*, at p. 233.

## POINT II

### SINCE PLAINTIFFS' CLAIMS ARE NOT RIPE FOR ADJUDICATION THIS COURT MUST DECLINE TO EXERCISE JURISDITION

Even assuming Plaintiffs had standing to invoke this Court's jurisdiction, the "dispute" they produce by their Complaint is unripe.  Ripeness is also a matter of subject matter jurisdiction. See *Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 687 (2d Cir. 2013)*.  As discussed above, the Release and the public policy statements contained therein did not create a ripe controversy that is properly before this Court. The dispute between the parties, to the extent one exits at all, is a dispute over the proper public policy approaches: information sharing and coordination among federal, state and local governments, versus, restricting such information sharing in the area of voting registration. Plaintiffs' attempt to have this Court "weigh-in" on this ongoing public policy debate under the guise of federal claims is contrary to the well-settled ripeness doctrine.

As the District court for the Southern District recently held:

> The concept of ripeness is rooted in Article III's case or controversy requirement and the prudential limitations on the exercise of judicial authority. *S&R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 460 (S.D.N.Y. 2008). The ripeness doctrine ensure[s] that a dispute has generated injury significant enough to satisfy the case or controversy requirement of Article III of the U.S. Constitution. *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002). It also prevents courts from entangling [themselves] in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur, depending on the final administrative resolution. *Id.* The ripeness requirement defers federal review of claims until they have arisen in a more concrete and final form. *Murphy*, 402 F.3d at 347.

*Town & Country Adult Living, Inc. v. Village/Town of Mt. Kisco,* 2019 U.S. Dist. LEXIS 50676 *32 (S.D.N.Y. 2019).  Similarly, this Court observed in *Rivendell* that even where a Town had taken action, the fact that such action was not "final" made their Constitutional challenge unripe:

> Although the success of plaintiffs' application for a variance is doubtful, mere doubt is insufficient to establish that the decision maker has dug in its heels and made certain that the application will be denied. *See Ecogen, LLC v. Town of Italy,* 438 F. Supp. 2d 149, 160 (W.D.N.Y. 2006) (citing *Manufactured Home Cmtys., Inc. v. City of San Jose,* 420 F.3d 1022, 1035 (9th Cir. 2005)).
>
>          \*     \*     \*
>
> Having failed to plead facts that establish they obtained a final decision or that seeking a variance would be futile, plaintiff's federal claims for violations of their rights to petition the government for the redress of grievances, substantive due process, procedural due process, and equal protection are not yet ripe for adjudication in a federal court. Accordingly, these claims will be dismissed without prejudice to allow plaintiffs to re-assert such claims in the event they become ripe…

*Rivendell Winery, LLC v. Town of New Paltz,* 725 F. Supp. 311, 317-19 (N.D.N.Y. 2010)

Notably, to the extent Plaintiffs contend that the voter registration lists which were the subject of the Release are not public records or not publicly available information, they would have recourse through a CPLR Article 78 proceeding to prohibit such disclosure. Notably, Plaintiffs have failed to make any such allegation or commence such a proceeding.

> A government official's statement that a statute prohibits a type of conduct in the abstract—even where the official also states [his] intent to enforce the statutory prohibition against the public generally—is usually insufficient, without more, to establish that prosecution is imminent against a particular plaintiff. *Jones v. Schneiderman,* 101F. Supp. 3d283 , 2015 U.S. Dist. LEXIS 42926, 2015 WL 1454529, at \*4 (S.D.N.Y. Mar. 31, 2015) (comparing cases); *see* also *Rincon Band of Mission Indians v. San Diego Cnty.,* 495 F.2d 1, 4 (9th Cir. 1974), cert. denied, 419 U.S. 1008, 95 S. Ct. 328, 42 L. Ed. 2d 283 (1974) (holding that government officials' statements to plaintiffs that gambling was impermissible on tribal land "under [a] county ordinance," and that all the laws of the county would be enforce, failed to establish a sufficient threat of prosecution for standing purposes).

*Nation v. Tanner,* 108 F. Supp. 3d 29, 33 (N.D.N.Y. 2015). Thus, the absence of a ripe controversy further compels dismissal of Plaintiffs' Complaint as a matter of law.

## POINT III

### THE ABSENCE OF ANY ACTION COGNIZABLE UNDER THE VRA OR "STATE ACTION" REQUIRES DISMISSAL OF PLAINTIFFS' SECTION 1983 CLAIMS

As a matter of law, the July 18, 2019 Release did not constitute "state action" or an "act of intimidation" sufficient to support a claim under 42 U.S.C. §1983 or the Voting Rights Act (52 U.S.C. § 10307(b)) (hereinafter "VRA").

As to Plaintiffs' VRA claim, their intimidation/threat theory is not only illogical, but their allegations completely fail to meet the requirements of a VRA claim. First, the relevant law enforcement agency (i.e. ICE) which Plaintiffs' posit presents a potential "threat" to unidentified individuals who they claim to be concerned about, ICE was not a party to the Release and there are no factual allegations that ICE is aware of, even interested in or would be prompted to action by the information-sharing idea referenced in the Release. Second, Plaintiffs' intimidation/threat hypothesis is premised upon the assumption that ICE would not follow federal law, but rather would act unlawfully or incompetently in conducting investigation or removal proceedings. While Plaintiffs are free to make that assumption and hold such beliefs about ICE or any other branch of government, this Court must not countenance such an assumption - which assumption is an essential element to Plaintiffs' theory under the VRA. Finally, the settled law of the VRA plainly requires factual allegations of actual acts of intimidation or threats and an intention to intimidate which Plaintiffs have not. and cannot, allege in their Complaint. *See*: *Olagues v. Russoniello*, 770 F.2d 791, 802 (9th Cir. 1985); *United States v. Leflore County*, 371 F.2d 368, 370-71 (5th Cir. 1967); *Pincham v. Illinois Judicial Inquiry Bd.*, 681 F. Supp. 1309, 1317 (Ill. N.D. 1988) ["there is also no allegation that the defendants **intended** to intimidate, threaten, or coerce Justice Pincham. Allegations and later proof of such an **intent** is an essential element of a § 1973i(b)

17

claim."] (emphasis supplied); *see also Dekom v. Nassau County,* 595 Ded. Appx 12 (2nd Cir. 2014); *Willmington v. County of Albany*, 593 F. Supp. 2d 446, 463 (N.D.N.Y. 2006);

Moreover, it is well settled that, parties may not be held liable under §1983 unless it can be established that they have acted under the color of state law. *See*, e.g., *Rounseville v. Zahl,* 13 F.3d 625 (2d Cir. 1994) [noting state action requirement under § 1983]; *Wise v. Battistoni*, U.S. Dist. LEXIS 18864, 1992 WL 380914, *1 (S.D.N.Y. Dec. 10, 1992) (same) (citations omitted). State action is an essential element of any § 1983 claim. *See Gentile v. Republic Tobacco Co.,* No. U.S. Dist. LEXIS 18667, 1995 WL 743719, *2 (N.D.N.Y. 1995) (citing *Velaire v. City of Schenectady*, 862 F. Supp. 774, 776 (N.D.N.Y. 1994). Not only does the complaint affirmatively acknowledge that the Release was not an official or final action by County Defendants (Dkt. No. 1 ¶¶ 53-55), but Plaintiffs' Complaint fails to include any well-plead factual allegations of any state action by County Defendants that could support their §1983 claim.

## POINT IV

### PLAINTIFF'S FAILURE TO PLEAD A *MONELL* CLAIM REQUIRES DISMISSAL OF THE COMPLAINT

This § 1983 claim against Rensselaer County must also be dismissed on the additional basis that Plaintiffs' have not plead a claim under *Monell.*  As this Court recently held in *Alexander:*

> Before a municipality can be held liable under § 1983, it must be shown to have been 'the moving force of the constitutional violation.'" *Carmichael v. City of N.Y.*, 34 F. Supp. 3d 252, 262-63 (E.D.N.Y. 2014) (quoting *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)); *see also Cash v. Cty. of Erie*, 654 F.3d 324, 341-42 (2d Cir. 2011) (equating "moving force" with "proximate cause").
> In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official

policy of the municipality caused the constitutional injury. *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citation omitted).

The fifth element reflects the notion that a municipality may not be held liable under § 1983 solely because it employs a tortfeasor. *Cowan v. City of Mt. Vernon*, 95 F. Supp. 3d 624, 643 (S.D.N.Y. 2015) (quoting *Bd. of Cty. Comm'rs v. Brown,* 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). Importantly, this element can only be satisfied where a plaintiff proves that a municipal police of some nature caused a constitutional tort. *Roe*, 542 F.3d at 36 (citation omitted).

\*   \*   \*

Even at the motion-to-dismiss stage, a plaintiff cannot merely assert the existence of a municipal policy or custom in conclusory terms, but rather must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists. *Benacquista*, 217 F. Supp. 3d at 600 (citation and internal quotation marks omitted).

[Plaintiffs'] amended complaint fails to plausibly establish an all-important link in the causal chain leading to *Monell* liability. Among other things, plaintiff has failed to demonstrate how the alleged misconduct…that took place on this occasion was caused or encouraged by a policy or custom attributable to the municipality itself.…These kind of conclusory allegations are insufficient to survive a motion to dismiss. Accordingly, the…defendants' motion to dismiss the § 1983 claim for municipal liability…will be granted.

*Alexander v. City of Syracuse,* 2018 U.S. Dist. LEXIS 210687 \*\*24-26 (N.D.N.Y. 2018).

Similarly, Plaintiffs' complete failure to allege the existence of an unlawful County policy, let alone, a County policy that was causally related to any injury they suffered, compels dismissal of the Complaint.

## POINT V

### TO THE EXTENT THE COURT DECLINES TO DISMISS THE COMPLAINT IN ITS ENTIRETY, THE CASE CAPTION SHOULD BE CORRECTED AND PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES MUST BE DISMISSED

Since Plaintiffs' Complaint makes clear that Rensselaer County is the real (and only) party they have sued, Plaintiffs naming Messrs. Schofield, McLaughlin, Merola and Stammel as Defendants in this action is gratuitous, meaningless and unnecessary. As discussed *supra (F.N.*

*No.1)* Plaintiffs' Complaint makes clear that they are only suing Messrs. Schofield, McLaughlin, Merola and Stammel in their "official capacity[ies]" (Dkt. No. 1 ¶¶ 36-39) which, according to settled law, means that the County is the real Defendant and naming the four officials is redundant. *See: Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 690 (1978); *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985); *Hulett v. City of* Fowler, 253 F.Supp. 3d 462, 498-99 (N.D.N.Y. 2017), and *De Ratafia v. County of Columbia*, 2013 U.S. Dist. LEXIS 138169 (N.D.N.Y. 2013). Accordingly, to the extent this Court declines to dismiss the Complaint in its entirety the caption should be modified to reflect that the only Defendant in this action is: "RENSSELAR COUNTY AND ITS BOARD OF ELECTIONS".

Contrary to settled law, Plaintiff indiscriminately makes claims for punitive damages against Defendants plainly public officials in their "official capacities" (rather than their individual capacities (Dkt. 1 at ¶¶ 36-39). Both the Supreme Court and the Courts within the Second Circuit have clearly stated that punitive damages are not recoverable against municipalities. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266-271 (1981); *See also Brennan v. City of White Plains*, 67 F. Supp. 2d 362, 378 (1999); *Thoreson v. Penthouse Intl.*, 80 N.Y.2d 490, 499 (1992); *Sharapata v. Town of Islip*, 56 N.Y.2d 332 (1982) (holding same). Therefore, Plaintiff's claims for punitive damages in this action must be dismissed as a matter of law.

## CONCLUSION

WHEREFORE, it is respectfully requested that the Court: (a) dismiss Plaintiff's Complaint as against all County Defendants; and (b) grant such other and further relief in the County Defendants' favor as this Court deems just and proper.

Dated: August 19, 2019

_____
Gregg T. Johnson Bar Number 506443
Attorneys for Defendants
JOHNSON & LAWS, LLC
648 Plank Road, Suite 204
Clifton Park, New York 12065
Tel:    518-490-6428
Fax:    518-616-0676
Email: gtj@johnsonlawsllc.com

TO:   Benjamin L. Berwick, Esq.
Bar No. 518959
PROTECT DEMOCRACY PROJECT
Attorneys for Plaintiffs
15 Main Street, Suite 312
Watertown, Massachusetts 02472
Tel:    202-579-4582
Fax:    929-777-8428
Email: ben.berwick@protectdemocracy.org

Farbod Faraji
*Pro Hac Vice*
PROTECT DEMOCRACY PROJECT
222 Broadway, 19th Floor
New York, NY 10038
Tel:    202-579-4582
Fax:    929-777-8428
Email: farbod.faraji@protectdemocracy.org

Jamila Benkato
*Pro Hac Vice*
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Avenue, Suite 163
Washington, DC  20006
Tel:    202-945-2157
Fax:    929-777-8428.
Email: Jamila.benkato@protectdemocracy.org