UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NEW YORK IMMIGRATION COALITION; COMMON CAUSE/NEW YORK; COMMUNITY VOICES HEARD; CITIZEN ACTION OF NEW YORK; and JENIFER BENN,

Plaintiffs,

v.

RENSSELAER COUNTY BOARD OF ELECTIONS; JASON SCHOFIELD in his official capacity as Commissioner of the Rensselaer County Board of Elections; STEVEN MCLAUGHLIN, in his official capacity as Rensselaer County Executive; FRANK MEROLA, in his official capacity as Rensselaer County Clerk; and MICHAEL STAMMEL, in his official capacity as Chairperson of the Rensselaer County Legislature,

Defendants.

Case No. 1:19-cv-00920-DNH-CFH

**PLAINTIFFS' SUPPLEMENTAL BRIEF**

## TABLE OF CONTENTS


INTRODUCTION .......... 1

ARGUMENT .......... 1

I. Well-settled law establishes that the organizational plaintiffs have adequately pleaded both organizational and associational standing .......... 1

1. Organizational standing .......... 2

2. Associational standing .......... 7

II. Ms. Benn maintains standing to pursue monetary and related declaratory relief for the violations of her constitutional right to vote under 42 U.S.C. § 1983 .......... 9

III. The Green Light Law does nothing to moot plaintiffs' claims of voter intimidation. .......... 11

CONCLUSION .......... 12

# TABLE OF AUTHORITIES


Cases Page(s)

*Baca v. Colorado Dep't of State*,
935 F.3d 887 (10th Cir. 2019) .......... 11

*Baur v. Veneman*,
352 F.3d 625 (2d Cir. 2003).......... 3

*Bldg. & Const. Trades Council of Buffalo, N.Y. & Vicinity v. Downtown Dev., Inc.*,
448 F.3d 138 (2d Cir. 2006).......... 8, 9

*Burdick v. Takushi*,
504 U.S. 428 (1992).......... 8, 10

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*,
868 F.3d 104 (2d Cir. 2017).......... 3, 7

*Common Cause Indiana v. Lawson*,
937 F.3d 944 (7th Cir. 2019) .......... 6

*Common Cause/Georgia v. Billups*,
554 F.3d 1340 (11th Cir. 2009) .......... 6

*Common Cause/New York v. Brehm*,
344 F. Supp. 3d 542 (S.D.N.Y. 2018).......... 6, 7

*Crue v. Aiken*,
370 F.3d 668 (7th Cir. 2004) .......... 11

*Fortune Soc'y v. Sandcastle Towers Hous. Dev. Fund Corp.*,
388 F. Supp. 3d 145 (E.D.N.Y. 2019) .......... 2, 4

*Genesis Healthcare Corp. v. Symczyk*,
569 U.S. 66 (2013).......... 11

*Hunt v. Wash. State Apple Adver. Com'n*,
432 U.S. 333 (1977).......... 9

*John v. Whole Foods Mkt. Grp., Inc.*,
858 F.3d 732 (2d Cir. 2017).......... 3, 5

*Kearns v. Cuomo*,
2019 WL 5849513 (W.D.N.Y. Nov. 8, 2019) .......... 12

*Kiryas Joel Alliance v. Village of Kiryas Joel*,
2011 WL 5995075 (S.D.N.Y. Nov. 29, 2011) .......... 7

*Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.*,
906 F.3d 215 (2d Cir. 2018) .......... 11

*Knife Rights, Inc. v. Vance*
2013 WL 5434610 (S.D.N.Y. Sept. 25, 2013) .......... 5

*Knife Rights, Inc. v. Vance*,
802 F.3d 377 (2d Cir. 2015) .......... 4, 5

*Lopez Torres v. N.Y. State Bd. of Elections*,
462 F.3d 161 (2d Cir. 2006) .......... 7

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*,
139 S. Ct. 1652 (2019) .......... 11

*Nassau & Suffolk Cty. Taxi Owners Ass'n, Inc. v. New York*,
336 F. Supp. 3d 50 (E.D.N.Y. 2018) .......... 7

*Nat. Res. Def. Council v. Dep't of Interior*,
No. 18-CV-6903, 2019 WL 4601722 (S.D.N.Y. Sept. 23, 2019) .......... 3

*New York v. U.S. Dep't of Comm.*,
351 F. Supp. 3d 502 (S.D.N.Y.), *aff'd in relevant part, rev'd in part on other grounds sub nom. U.S. Dep't of Comm. v. New York*, 139 S. Ct. 2551 (2019) .......... 6

*OCA-Greater Houston v. Texas*,
867 F.3d 604 (5th Cir. 2017) .......... 4

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
547 U.S. 47 (2006) .......... 2

*Summers v. Earth Island Institute*,
555 U.S. 488 (2009) .......... 4, 8

*Wolff v. McDonnell*,
418 U.S. 539 (1974) .......... 11

*Young Advocates for Fair Education v. Cuomo*,
359 F. Supp. 3d 215 (E.D.N.Y. 2019) .......... 6

# INTRODUCTION

This case remains justiciable because all of the organizational plaintiffs continue to have standing under well-established law, separate and apart from plaintiff Jenifer Benn. All four organizational plaintiffs have organizational standing to pursue claims under Section 11(b) of the Voting Rights Act and 42 U.S.C. § 1983 because, in response to defendants' intimidating policy announcement, they have been forced to divert resources to counteract the harmful effects of defendants' policy on their voter registration and education efforts. And, three of the four organizational plaintiffs have associational standing to bring such claims for declaratory and injunctive relief on behalf of their members who have been intimidated by defendants' actions. Thus, the Court need not even reach the question of Ms. Benn's standing. Nonetheless, she too continues to have standing for retrospective relief pursuant to her claim under 42 U.S.C. § 1983.

In short, Ms. Benn's move does not shield defendants from being called to account in this Court. Rather, her decision to move only highlights the intimidation that Rensselaer County citizens continue to experience. Eligible citizens are afraid to exercise their constitutional right to vote, and Ms. Benn decided to move, in part, as a result of defendants' intimidating announcement. Indeed, this intimidation has been acknowledged by defendants' counsel, who admitted during oral argument that the policy announcement "could make [eligible voters] feel threatened or impede them [from] registering to vote." Tr. at 10:8-11. Because this remains a justiciable case, the Court should deny defendants' motion to dismiss.

# ARGUMENT

## I. Well-settled law establishes that the organizational plaintiffs have adequately pleaded both organizational and associational standing.

All four organizational plaintiffs have standing at the pleading stage of this case under at least one of two independent theories: (1) organizational standing, based on an organization's

own interests; and (2) associational standing, based on the interests of an organization's members. *Fortune Soc'y v. Sandcastle Towers Hous. Dev. Fund Corp.*, 388 F. Supp. 3d 145, 162 (E.D.N.Y. 2019) ("Organizational and associational standing are separate bases on which an organization may assert standing, each having distinct requirements.").[1] Neither theory of standing depends on the other. And neither depends on Ms. Benn's standing, as defendants would have this Court believe. As a result, this case should continue even if the Court were to conclude—contrary to plaintiffs' argument (*see infra* point II.)—that Ms. Benn no longer has standing. Thus, the Court need not even address Ms. Benn's standing. *See Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.").

**1. Organizational standing.**

All four organizational plaintiffs have organizational standing because they will have to divert resources to counteract the harmful effects of defendants' policy announcement. Here, each of the organizational plaintiffs engages in voter registration, education, and engagement work, and the complaint's allegations clearly set out that each will have to divert resources in support of its mission while defendants' unlawful conduct is left unchecked:

- **New York Immigration Coalition** is an umbrella policy and advocacy organization for more than 200 groups in New York State. Encouraging voter registration is a vital part of the work that its members do and defendants' actions will require it to divert more resources toward registering voters now fearful of registering at the DMV, educating members of the community about their rights, and dispelling the fears engendered by defendants' actions. One of its member organizations has already held a meeting to discuss strategies and plans for addressing the consequences of defendants' policy announcement *See* Compl. ¶¶ 15-17, 79 (ECF No. 1).

- **Common Cause/New York** is the New York chapter of Common Cause and has more than 60,000 members and activists statewide, including approximately 484

[1] In this brief, emphases were added to, and internal punctuation, brackets, quotation marks, and citations were omitted from, quotations (unless otherwise indicated).

members in Rensselaer County. Common Cause/New York spends considerable time and resources on voter registration efforts and to improve election administration in New York and will have to divert resources to counteract the impact of defendants' actions. *See id.* ¶¶ 18-20, 80.

- **Community Voices Heard** is a member-led, 501(c)(3) nonprofit organization principally comprised of women of color and low-income families in New York State. Because voter registration is core to its mission, Community Voices Heard will be required to divert resources to educate citizens about the new policy, its limits, and its implications for voters in nearby areas. This will entail additional, unbudgeted meetings, the creation of new educational materials, and unbudgeted expenditures on translation of those materials. *See id.* ¶¶ 21-23, 83.

- **Citizen Action of New York** is a non-profit grassroots membership organization, which has over 60,000 members and activists in New York State, including approximately 1,300 in Rensselaer County. Citizen Action devotes considerable resources to voter education and engagement programs in Rensselaer County and surrounding areas, including voter registration efforts; defendants' actions will hamper Citizen Action's voter engagement efforts and require it to divert resources to counteract the impact of defendants' actions by helping more voters register. *See id.* ¶¶ 24-27, 81-82.

These allegations are sufficient to plead organizational standing: "where an organization diverts its resources away from its current activities, it has suffered an injury that has been repeatedly held to be independently sufficient to confer organizational standing." *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 111 (2d Cir. 2017); *see also Nat. Res. Def. Council v. Dep't of Interior*, No. 18-CV-6903, 2019 WL 4601722, at *5 (S.D.N.Y. Sept. 23, 2019) ("[W]hen a defendant's actions impede an organization's ability to carry out its responsibilities, the plaintiff has suffered an injury in fact."). These allegations of harm to organizational interests are sufficient to meet the injury-in-fact requirement, which the Second Circuit has repeatedly stressed is a "low threshold." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017). And that is all the more true at the pleading stage, where "standing allegations need not be crafted with precise detail, nor must the plaintiff prove [ ] allegations of injury." *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003).

Ms. Benn's move does nothing to alter the claim to organizational standing. Defendants mistakenly assume that a diversion of resources theory of standing must be somehow predicated on Ms. Benn or on the expenditure of resources on behalf of a particular organizational member. *See* Defs.' Suppl. Br. at 4-6 (ECF No. 63). Not so. Whether an organization has standing to sue in its own right—*i.e.* organizational standing based on a diversion of resources—is a distinct inquiry from whether an organization has associational standing to sue on behalf of its members. *See Fortune Soc'y*, 388 F. Supp. 3d at 162. In order to plead standing based on a diversion of resources, plaintiffs need not identify *any* organizational members because "'organizational standing' does not depend on the standing of the organization's members." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017). After all, the whole point of organizational standing is that *the organization*, as opposed to any specific members, has been harmed by defendants' actions.[2] Accordingly, Ms. Benn's move does not change the fact that the organizational plaintiffs have standing in this case because they have properly pleaded injury based on a diversion of their *own* resources. *See supra* & Pls.' Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n") at 7-9 (ECF No. 44).

For the same reasons, defendants' reliance on *Knife Rights, Inc. v. Vance* is also unavailing. 802 F.3d 377 (2d Cir. 2015). Defendants cite *Knife Rights*, a case about past injury, because they erroneously argue that organizational plaintiffs diverted resources to address the harm to *only* Ms. Benn before she moved. *See* Defs.' Suppl. Br. at 4. But, as explained above,

---

[2] Defendants' confusion between organizational and associational standing leads them to erroneously rely on *Summers v. Earth Island Institute*, 555 U.S. 488 (2009). But because *Summers* was a case about *associational standing*, not organizational standing, *see id.* at 494, it does not support defendants' arguments against plaintiffs' *organizational standing* based on a diversion of resources. As set forth *infra* (footnote 6), it is also inapplicable in assessing the adequacy of associational standing at the pleading stage, as is the case here.

that is not the case. Plaintiffs' organizational standing is not based on Ms. Benn's injury, but rather current and ongoing injuries to the organizations themselves which must divert resources going forward to counteract defendants' illegal policy. *See* Compl. ¶¶ 15-27, 79-83.

Moreover, *Knife Rights* dealt with a situation where an organization claimed standing based on allegations that—in the past—it had expended *litigation resources* to preclude application of a criminal statute in a particular way. *See Knife Rights, Inc. v. Vance*, 2013 WL 5434610, at *5 (S.D.N.Y. Sept. 25, 2013) ("At most, Knife Rights and the Foundation have expended litigation resources in order to avoid an entirely hypothetical possibility that the government's policies will injure their members."). In fact, there was no indication that there would be future harm to the organization. *Knife Rights*, 802 F.3d at 388. That bears no relationship whatsoever to the situation here. Plaintiffs are voter engagement, education, and registration organizations whose missions (and not just their past litigation activities) are continuously frustrated and undermined by defendants' policy announcement. They will have to—on an ongoing basis until the policy is enjoined—divert resources toward registering voters who would have otherwise registered at the DMV, conduct outreach to educate voters about their rights, and address the fear caused by defendants' announced policy. *See* Compl. ¶¶ 11; 15-27; 79-83. These allegations of *current and ongoing injury* are sufficient to confer standing at the pleading stage. *See Whole Foods Mkt. Grp.*, 858 F.3d at 736-37 (explaining that "general factual allegations of injury resulting from the defendant's conduct may suffice" at the pleading stage, because it is presumed on a motion to dismiss that "general allegations embrace those specific facts that are necessary to support the claim.").

Defendants' remaining arguments are nothing more than an attempt to invent a new standard for organizational standing. Defendants claim that the organizational plaintiffs here

engage in "advocacy services" and are thus not the kind that can obtain organizational standing. *See* Defs.' Suppl. Br. at 5. But defendants are wrong. Federal courts have held that these types of allegations concerning disruption of voter registration and education efforts are sufficient to confer standing for these very plaintiffs.[3] Indeed, defendants' main authority *concedes* as much: *Young Advocates for Fair Education v. Cuomo* ("*YAFFED*"),[4] observes that Common Cause/ New York (a plaintiff here) is just the kind of plaintiff that possesses standing in a diversion of resources case. *See* 359 F. Supp. 3d 215, 232 (E.D.N.Y. 2019) (citing *Common Cause/New York v. Brehm*, 344 F. Supp. 3d 542, 546-50 (S.D.N.Y. 2018)). And, as the Seventh Circuit observed just this year in finding that Common Cause had standing to challenge the process used to remove voters from the rolls, that proposition of law is entirely uncontroversial: "Our sister circuits have upheld the standing of voter-advocacy organizations that challenged election laws based on similar drains on their resources." *Common Cause Indiana v. Lawson*, 937 F.3d 944, 952 (7th Cir. 2019); *e.g.*, *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1350-51 (11th Cir. 2009).

---

[3] *See, e.g.*, *Common Cause/New York v. Brehm*, 344 F. Supp. 3d 542, 546-50 (S.D.N.Y. 2018); *New York v. U.S. Dep't of Comm.*, 351 F. Supp. 3d 502, 575-76 (S.D.N.Y.) (holding that New York Immigration Coalition, another organizational plaintiff in this case, has standing), *aff'd in relevant part, rev'd in part on other grounds sub nom. U.S. Dep't of Comm. v. New York*, 139 S. Ct. 2551, 2565-66 (2019).

[4] As explained in plaintiffs' opposition to defendants' motion, *YAFFED* is inapposite because each organizational plaintiff here serves its community and its mission through voter registration and engagement work, *see* Compl. ¶¶ 17, 20, 23, 27, not simply by advocating for or against governmental policies like the *YAFFED* plaintiff. Pls.' Opp'n at 9. Organizational plaintiffs here must spend additional resources registering people who otherwise would have registered through the DMV as well as overcoming voter intimidation and fear. Compl. ¶¶ 79-83. Moreover, and unlike the injury here, in *YAFFED* the alleged injury was nonexistent because the plaintiffs feared that a new statute would decrease educational standards; but as the court explained, the relevant statute could have the opposite effect and produce a "*higher* [educational] standard." *YAFFED*, 359 F. Supp. 3d at 238 (emphasis in original).

Defendants' other cases do no better: they quote from ***<u>the dissent</u>*** in *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, *see* Defs.' Suppl. Br. at 5-6 (quoting 868 F.3d 104, 121 (Jacobs, C.J., dissenting)), but that is definitionally not the law and the majority opinion holds that a diversion of resources constitutes an injury sufficient to confer standing, *id.* at 111 (majority opinion) ("[W]here an organization diverts its resources away from its current activities, it has suffered an injury that has been repeatedly held to be independently sufficient to confer organizational standing."). Lastly, defendants cite to *Kiryas Joel Alliance v. Village of Kiryas Joel*, but that case also supports the organizational plaintiffs' standing; it held that the organization possessed standing for a claim because it had "to divert resources from its other activities" to address what it perceived as an injury. *See* 2011 WL 5995075, at *7 (S.D.N.Y. Nov. 29, 2011).

**2. Associational standing.**

Because plaintiffs have organizational standing based on a diversion of resources theory, the Court need not address associational standing. *See Common Cause/New York*, 344 F. Supp. 3d at 549 ("Because it finds Plaintiff has organizational standing, the Court need not address the associational standing arguments."). However, should it do so, the Court should conclude that organizational plaintiffs New York Immigration Coalition, Common Cause/New York, and Citizen Action of New York have associational standing to bring claims for declaratory and injunctive relief.[5]

---

[5] The three organizational plaintiffs have associational standing under Section 1983 because "the Second Circuit has recognized a limited exception to the general rule that organizations may not bring Section 1983 claims on behalf of their members where the organization alleges a violation of the First Amendment right to freedom of association." *Nassau & Suffolk Cty. Taxi Owners Ass'n, Inc. v. New York*, 336 F. Supp. 3d 50, 70 n.12 (E.D.N.Y. 2018) (citing *Lopez Torres v. N.Y. State Bd. of Elections*, 462 F.3d 161, 170 n.1 (2d Cir. 2006)). That exception is implicated here, where plaintiffs allege that defendants have imposed an undue burden on the fundamental

Defendants argue that plaintiffs do not have associational standing because the organizations have not alleged that any of their members were injured by defendants' policy announcement. Defs.' Suppl. Br. at 6. But the Second Circuit has held precisely the opposite: there is "no authority" supporting "the proposition that an association must 'name names' in a complaint in order to allege injury in fact to its members." *See Bldg. & Const. Trades Council of Buffalo, N.Y. & Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 145 (2d Cir. 2006) ("*Building Trades*"). Rather, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," because it is presumed that "general allegations embrace those specific facts that are necessary to support the claim." *Id.*[6]

And, it is clear that the complaint here contains allegations that "one or more of [the] members" of the plaintiffs "[have] suffered a concrete and particularized injury" as a result of defendants' policy announcement. *Id.* at 145. The complaint alleges that members of New York Immigration Coalition, Common Cause/New York, and Citizen Action of New York reside in Rensselaer County, want to register to vote or update their voter registration information while at the DMV, and now face a real fear that their names will be turned over to ICE simply because they exercised their right to register to vote. Compl. ¶¶ 79-83. Nothing more is required at this stage.

---

right to vote—and the corollary right to political association—in violation of the First and Fourteenth Amendments. Compl. ¶¶ 3, 77, 93; *see Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (explaining that restrictions on ballot access implicate both the "individual's right to vote and his right to associate with others for political ends").

[6] Again, defendants' reliance on *Summers* is misplaced. That case arose not in the context of a motion to dismiss, but on review of a preliminary injunction which the Supreme Court overturned finding that the evidentiary record submitted by the member organization did not back their claims of injury to their members. 555 U.S. at 494-95. At the pleading stage, as the Second Circuit has made clear, all that is required is for the organization to allege concrete injury to its members as a result of the challenged conduct.

Plaintiffs have also properly alleged the two remaining prongs necessary to establish associational standing: that the suit be "germane to the organization's purpose" and that it not require individual participation of the members. *See Hunt v. Wash. State Apple Adver. Com'n*, 432 U.S. 333, 343 (1977). This suit is clearly germane to the purposes of the organizations here, which focus on protecting the rights of their members and all New Yorkers to participate in the political process. Compl. ¶¶ 79-83. And defendants' contention that the suit requires the participation of individual members in the lawsuit, Defs.' Suppl. Br. at 6, is without basis. Second Circuit precedent clearly establishes that "where the organization seeks a purely legal ruling without requesting that the federal court award individualized relief to its members, the *Hunt* test may be satisfied." *Building Trades*, 448 F.3d at 150 (because the organization primarily sought civil penalties and injunctive relief, not money damages, the court concluded these claims did not require "individualized proof."). Here, as in *Building Trades*, organizational plaintiffs' claims for declaratory and injunctive relief do not require individualized proof on behalf of the organizational plaintiffs' members because they seek equitable remedies: a declaration that Rensselaer County's policy is unlawful and an injunction against it being carried out. *See* Compl. at 25 ¶¶ 2-3, 8 (Prayer for Relief).

## II. Ms. Benn maintains standing to pursue monetary and related declaratory relief for the violations of her constitutional right to vote under 42 U.S.C. § 1983.

Even after moving, Ms. Benn possesses standing for damages and declaratory relief for the past deprivation of her constitutional rights. Defendants argue that Ms. Benn loses standing to bring all of her claims as a result of her move. Defs.' Suppl. Br. at 1-2. Not so. Plaintiffs have already acknowledged that Ms. Benn is no longer entitled to purely prospective injunctive relief under Section 11(b) of the Voting Rights Act, *see* ECF No. 57; but she *still has standing* to pursue her claims for declaratory relief and damages under the First and Fourteenth Amendments

and 42 U.S.C. § 1983. *See* Compl. ¶¶ 3, 77, 91-98. Therefore, independent of the standing of the organizational plaintiffs above, Ms. Benn possesses standing for damages and declaratory relief.

Defendants' arguments that Ms. Benn's move deprives her of standing or somehow moots the case fail to grapple with the simple fact that she maintains standing for the injury she suffered when she was a Rensselaer County resident. Defs.' Suppl. Br. at 1-2. The First and Fourteenth Amendments make it unlawful to impose an undue burden on the right to vote. *See Burdick v. Takushi*, 504 U.S. 428, 433-34 (1992). And when Ms. Benn was a resident and eligible voter, defendants unlawfully burdened her right to vote. Specifically, the complaint alleges that defendants' new policy unduly burdens Ms. Benn's right to vote by threatening information sharing that she reasonably feared would result in unwarranted immigration investigations with no corresponding legitimate policy justification. Compl. ¶¶ 91-98; *id.* ¶¶ 28-33 (noting that Ms. Benn reasonably feared that registering to vote at the DMV would subject her, her family, and her community to an ICE investigation). And Ms. Benn has submitted a declaration confirming that she was intimidated from registering to vote in *Rensselaer County* and her move was motivated in part by this fear. *See* Ex. 1, Declaration of Jenifer Benn Decl. ¶¶ 4, 7-8. This is a cognizable injury to her voting rights, *see* Compl. ¶ 92, and a favorable decision in this case will redress Ms. Benn's injury by finding that her constitutional rights were violated and by compensating her for the damages she sustained. Thus, Ms. Benn possesses standing under Section 1983.

Defendants' arguments about mootness—which again fail to acknowledge or address that Ms. Benn has suffered a cognizable injury under Section 1983—fare no better. Defs.' Suppl. Br. at 7-8. Ample caselaw establishes that even where intervening circumstances render a plaintiff's interest in prospective injunctive relief moot, a plaintiff still maintains standing to seek damages

and declaratory relief for past harm. *See Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019) ("A case is not moot so long as a claim for monetary relief survives"); *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974) (permitting "declaratory judgment as a predicate to a damages award").[7] Here, Ms. Benn prays for monetary damages and declaratory relief under Section 1983 because her right to vote was unduly burdened and she moved, in part, due to defendants' intimidating policy. Compl. at 25-26, ¶¶ 3, 4, 6 (Prayer for Relief); *id.* ¶ 34; Benn Decl. ¶ 4. Therefore, the fact that Ms. Benn moved out of Rensselaer County does not alter the fact that she still maintains standing to pursue monetary and related declaratory relief for the violations of her constitutional right to vote. *See Baca v. Colorado Dep't of State*, 935 F.3d 887, 911 (10th Cir. 2019) ("[W]e consider declaratory relief retrospective to the extent that it is intertwined with a claim for monetary damages that requires us to declare whether a past constitutional violation occurred.").[8]

## III. The Green Light Law does nothing to moot plaintiffs' claims of voter intimidation.

Finally, the Green Light Law discussed at oral argument does *not* moot plaintiffs' claims of voter intimidation in this case. To establish mootness based on changed circumstances, "*defendant* has the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur . . . and that interim relief or events have *completely and irrevocably* eradicated the effects of the alleged violation." *Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 224 (2d Cir. 2018). Defendants have not—

---

[7] *See also Crue v. Aiken*, 370 F.3d 668, 677 (7th Cir. 2004) ("When a claim for injunctive relief is barred but a claim for damages remains, a declaratory judgment as a predicate to a damages award can survive.").

[8] Defendants rely on *Genesis Healthcare Corp. v. Symczyk* to support their mootness argument, but that case is inapposite because it concerned whether a plaintiff could continue to serve as a class representative after she received an offer of judgement that fully settled all of her personal interests in the outcome of the lawsuit. 569 U.S. 66 (2013).

and cannot—make such a showing here. Unless and until defendants announce that they will actually comply with all applicable laws, including the Green Light Law, and take corrective steps to rescind their intimidating policy announcement, eligible voters in Rensselaer County will continue to be intimidated.

Application of the mootness doctrine is particularly ill-suited to the facts of this case because defendants' policy announcement makes clear that they disagree with the Green Light Law and that they intend to share information with ICE in response to its passage; the announcement emphasizes that, "in response to" the Green Light Law, defendants will "share with U.S. Immigration, Customs and Enforcement (I.C.E.) the names and addresses of people that have registered to vote in Rensselaer County through the Motor Voter Program." Schofield Decl. Ex. A (Policy Announcement) (ECF No. 34-2).[9]

## **CONCLUSION**

The Court should deny the motion to dismiss.

November 12, 2019

Respectfully submitted,

/s/ *Benjamin L. Berwick*
Benjamin L. Berwick
Bar No. 518959
PROTECT DEMOCRACY PROJECT
15 Main Street, Suite 312
Watertown, MA 02472
T: (202) 579-4582 | F: (929) 777-8428

Farbod K. Faraji
*Pro Hac Vice*
PROTECT DEMOCRACY PROJECT
77 Pearl Street,
Middletown, CT 06459
T: (202) 579-4582 | F: (929) 777-8428

Chiraag Bains*
Bar No. 701196
DĒMOS
740 6th Street NW, 2nd Floor
Washington, DC 20001
T: (202) 864-2746

Brenda Wright
*Pro Hac Vice*
Stuart C. Naifeh
*Pro Hac Vice*
Miranda Galindo
*Pro Hac Vice*

[9] The recent decision in *Kearns v. Cuomo*, 2019 WL 5849513 (W.D.N.Y. Nov. 8, 2019) does not change this ongoing threat. The Court in that matter dismissed a challenge to the Green Light Law brought by the clerk of a different county and strictly on standing grounds.

Cameron Oatman Kistler
*Pro Hac Vice*
Jamila Benkato
*Pro Hac Vice*
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Avenue, Suite 163
Washington, D.C. 20006
T: (202) 579-4582 | F: (929) 777-8428

Jonathan M. Moses
*Application for Pro Hac Vice Forthcoming*
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street,
New York, NY 10019
T: (212) 403-1388 | F: (212) 403-2388

DĒMOS
80 Broad Street, 4th Floor
New York, NY 10004
T: (212) 485-6055 | F: (212) 633-2015

Sarah Rogerson
Bar No. 520280
Professor of Law
Director, Immigration Law Clinic
JUSTICE CENTER AT ALBANY LAW SCHOOL
80 New Scotland Avenue
Albany, NY 12208
T: (518) 445-2328

ATTORNEYS FOR PLAINTIFFS

* Admitted in Massachusetts, not D.C.; practice consistent with D.C. App. R. 49(c)(3).

**CERTIFICATE OF SERVICE**

Pursuant to Local Rule 5.1(a), I hereby certify that on November 12, 2019, I, Benjamin L. Berwick, electronically filed the foregoing document using the N.D.N.Y. CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/*Benjamin L. Berwick*
Benjamin L. Berwick
Bar No. 518959
PROTECT DEMOCRACY PROJECT
15 Main Street, Suite 312
Watertown, MA 02472
T: (202) 579-4582 | F: (929) 777-8428