UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NEW YORK IMMIGRATION COALITION;
COMMON CAUSE/NEW YORK; COMMUNITY
VOICES HEARD; CITIZEN ACTION OF NEW
YORK; and JENIFER BENN,

                              Plaintiffs

              -v-                                          1:19-CV-920

RENSSELAER COUNTY BOARD OF
ELECTIONS; JASON SCHOFIELD in his
official capacity as Commissioner of the
Rensselaer County Board of Elections;
STEVEN MCLAUGHLIN in his official capacity
as Rensselaer County Executive; FRANK
MEROLA, in his official capacity as Rensselaer
County Clerk; and MICHAEL STAMMEL in his
official capacity as Chairperson of the
Rensselaer County Legislature,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


APPEARANCES:                              OF COUNSEL:

PROTECT DEMOCRACY                         BENJAMIN L. BERWICK, ESQ.
Attorneys for Plaintiffs                  CAMERON OATMAN KISTLER, ESQ.
15 Main Street Suite 312                  FARBOD FARAJI, ESQ.
Watertown, Massachusetts, 02472           JAMILA GOLDKAMP BENKATO, ESQ.

DEMOS                                     BRENDA WRIGHT, ESQ.
Attorneys for Plaintiffs                  CHIRAAG BAINS, ESQ.
80 Broad Street, Fourth Floor             EMILY MIRANDA GALINDO, ESQ.
New York, New York 10004                  STUART NAIFEH, ESQ.

ALBANY LAW SCHOOL                         SARAH F. ROGERSON, ESQ.
Attorneys for Plaintiffs
80 New Scotland Avenue
Albany, New York 12208

JOHNSON & LAWS, LLC                       GREGG T. JOHNSON, ESQ.
Attorneys for Defendants                  LORAINE CLARE JELINEK, ESQ.
648 Plank Road, Suite 204                 APRIL J. LAWS, ESQ.
Clifton Park, NY 12020

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I.    INTRODUCTION

On July 18, 2019, Rensselaer County ("Rensselaer" or "the county") announced on Facebook its intention that defendant Rensselaer County Board of Elections ("the Board") would share with United States Immigration, Customs and Enforcement ("ICE") the names and addresses of voters registered through the Rensselaer County Department of Motor Vehicles ("DMV").  The individual defendants—sued in their official capacities—are:  Jason Schofield, a commissioner of the Board; Steven McLaughlin, the County Executive; Frank Merola, the County Clerk; and Michael Stammel, the Chairperson of the County legislature.

In response to the July 18 press release ("the press release"), plaintiff Jenifer Benn ("Benn" or "plaintiff"), along with the four organizational plaintiffs—New York Immigration Coalition, Common Cause/New York, Community Voices Heard, Inc., and Citizen Action of New York (together "the organizational plaintiffs")—have sued in this Court seeking compensatory and punitive damages, as well as preliminary and permanent injunctive relief. Plaintiffs claim jurisdiction based on § 11(b) of the Voting Rights Act, 52 U.S.C. § 10307 ("§ 11(b)") and 42 U.S.C. § 1983 ("§ 1983").  Defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6).

## II.    BACKGROUND

On July 17, 2019, Governor Andrew Cuomo signed into law S1747-B, the Driver's License Access and Privacy Act, also known as the Green Light Act ("Green Light Act").[1]

---

[1] All facts are taken from the complaint and accepted as true, as is appropriate for Rule 12(b)(6) motions. *Weshnak v. Bank of Am., N.A.*, 451 F. App'x 61, 61 (2d Cir. 2012).  That said, this Court can also consider

Dkt. 1, ¶ 40.  The Green Light Act allows a person to attain a driver's license using a broader range of documentation than was previously permissible and does not require evidence of lawful presence in the United States.  *Id.* ¶ 42.  The law takes effect on December 14, 2019. *Id.* ¶ 41.

The Green Light Act's opening the door for people to apply for a driver's license without proving citizenship did not come without collateral consequences.  After all, under both N.Y. ELEC. LAW § 5-212 and 52 U.S.C. § 20504, an individual applying for a driver's license can—by the same transaction—also register to vote.  Dkt. 1, ¶ 47.  However, "only citizens are allowed to vote."  *Bershatsky v. Levin*, 99 F.3d 555, 557 (2d Cir. 1996).

Perhaps anticipating the difficulties in ensuring that non-citizens were not improperly registering to vote, on July 18, 2019, Rensselaer issued the press release, noting that it would share voter registration information with ICE "to ascertain if any [new voting registrants] are in the [United States] illegally." *Id.* ¶ 51.  The Board did not formally adopt the press release, however.  *Id.* ¶ 54.  In fact, only one of the Board's two commissioners was consulted before the press release was issued.  *Id.*  The other commissioner did not support it.  *Id.*

Plaintiff Benn is a United States citizen and eligible voter who lived in Rensselaer at the time this suit was filed.[2]  Dkt. 1, ¶ 28.  She never registered to vote in the county.  *Id.*  She alleges that the press release has caused her not to want to register to vote through the DMV because her family includes a naturalized citizen and a legal permanent resident, and "because sometimes ICE mistakenly identifies naturalized citizens as noncitizens" which can

---

evidence outside of the pleadings for the 12(b)(1) motion without converting it to one for summary judgment. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

[2] Plaintiffs notified this Court on October 23, 2019 that plaintiff Benn has since moved out of Rensselaer.  Dkt. 57.

result in detention and removal. *Id.* ¶ 32. The organizational defendants all fund or participate in voter registration efforts. *Id.* ¶¶ 15-27.

On July 26, 2019, plaintiffs filed the instant claim under § 11(b) and § 1983. Dkt. 1. On August 19, 2019, all defendants moved to dismiss the complaint under Rule 12(b)(1) and (6). Dkt. 34. Defendants requested and were subsequently granted permission to submit supplemental briefing on the issue of Benn's relocation rendering her complaint moot on October 24, 2019. Dkt. 58. This Court held oral argument on defendants' motion on October 25, 2019. Text Minute Entry dated Oct. 25, 2019. The motion having been fully briefed, and the parties having orally argued its merits, the court will now consider the motion.

## III. LEGAL STANDARD

### A. SUBJECT MATTER JURISDICTION.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). "In determining the existence of subject matter jurisdiction, a district court may consider evidence outside the pleadings." *Saleh v. Holder*, 84 F. Supp. 3d 135, 137-38 (E.D.N.Y. 2014) (citing *Makarova*, 201 F.3d at 113). "Subject matter jurisdiction is a threshold issue and, thus, when a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the motion court must address the 12(b)(1) motion first." *Id.* at 138 (citations omitted).

### B. FAILURE TO STATE A CLAIM.

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Ginsburg v. City of Ithaca*, 839 F. Supp.

2d 537, 540 (N.D.N.Y. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Instead, the complaint must contain sufficient factual matter that it presents a claim to relief

that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In assessing the

plausibility of the plaintiff's complaint, "the complaint is to be construed liberally, and all

reasonable inferences must be drawn in the plaintiff's favor." *Ginsburg*, 839 F. Supp. 2d at

540.  The complaint may be supported by "any written instrument attached to it as an exhibit,

materials incorporated in it by reference, and documents that, although not incorporated by

reference, are 'integral' to the complaint." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419,

422 (2d Cir. 2011) (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)).

## IV.   DISCUSSION

In their motion to dismiss, defendants make five arguments:  (1) all plaintiffs lack

standing; (2) the claims are not ripe for adjudication; (3) there is no cognizable action under

§ 11(b); (4) there is no state action to merit relief under § 1983; and (5) plaintiffs have failed

to adequately plead a claim under *Monell v. Department of Social Services*, 436 U.S. 658,

690-95 (1978).  Defendants' supplemental briefing raised the further argument that Benn's

relocation mooted her claims.[3]

### A.  PLAINTIFFS' STANDING TO SUE.

Defendants have challenged the standing of every plaintiff to bring the present claim.

"Article III, Section 2 of the Constitution limits the jurisdiction of the federal courts to the

resolution of 'cases' and 'controversies.'"  *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d

Cir. 2012) (internal citations and quotation marks omitted).  The case and controversy

requirement in turn tasks plaintiffs with establishing "their standing as the proper parties to

---

[3] Defendants made other, novel arguments in their reply.  This Court will not consider arguments raised for the first time in a reply, especially on supplemental briefing.  *Conn. Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010).

bring suit." *Id.* (internal quotation marks and citations omitted). "[B]ecause standing is necessary to [a court's] jurisdiction, [the court is] obliged to decide the question at the outset." *Strubel v. Comenity Bank*, 842 F.3d 181, 187 (2d Cir. 2016).

To have standing, "a plaintiff must demonstrate (1) a personal injury in fact (2) that the challenged conduct of the defendant caused and (3) which a favorable decision will likely redress." *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 92 (2d Cir. 2018). Moreover, the injury must be "concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; [and] it must be fairly traceable to the challenged action of the defendant[.]" *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). In a complaint involving multiple plaintiffs, the presence of a single plaintiff with adequate standing is sufficient to meet the case and controversy requirement for all plaintiffs. *See Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264 n.9 (1977) ("Because of the presence of [one] plaintiff [with standing], we need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit.").

### 1. INDIVIDUAL PLAINTIFF JENIFER BENN.

In their motion to dismiss, defendants argue that plaintiff Benn lacks standing because she has not presented a concrete, particularized, and imminent injury. In particular, they argue that no voter information has yet been presented to ICE. They also argue that any possible injury that Benn could claim is attenuated and distant, because she herself is not an illegal immigrant, nor is anyone else in her family. Lastly, defendants note that the information that the press release states the Board would send to ICE is publicly available regardless of whether the Board sends it to them or not.

In response, plaintiffs argue that Benn's subjective fears of ICE's faulty systems are a sufficient injury to satisfy the requirements of standing. These fears result in households of

"mixed immigration" status being reluctant to share their information with the government, and Rensselaer's professed intention to share that information creates a cognizable harm.

Benn buttresses her standing arguments by relying on *New York v. United States Department of Commerce*, 351 F. Supp. 3d 502, 575-76 (S.D.N.Y. 2019) (finding standing for challenge to inclusion of citizenship question in census). She cites that case for the proposition that a fear of harm based on governmental interaction that could draw attention to immigration status could be sufficient to support standing. Her reliance is misplaced.

In reviewing that case, the Supreme Court did uphold standing, but it hedged that ruling by noting that the fact findings of the lower court "were not so suspect as to be clearly erroneous." *Dep't of Comm. v. New York*, 139 S. Ct. 2551, 2565 (2019). Crucially, the Supreme Court upheld standing not because of the parties' fears, but because noncitizen households could lose federal funding if they were undercounted in the census. *Id.* at 2565-66. Additionally, despite the fact that plaintiffs' alleged injury required the intervening acts of third parties not before the court, the plaintiffs in that case demonstrated that those "third parties will likely react in predictable ways" regarding a citizenship question in the census. *Id.* at 2566. The census gatherers would reliably ask the citizenship question, and undocumented immigrants would reliably avoid answering it. *Id.*

Benn's entire argument hinges on the unpredictability of ICE enforcement, and the possibility that they might wrongfully detain or otherwise pursue and investigate her or her family. As a result, there are substantial differences between this case—which hinges on this plaintiff's individual and unpredictable response to an unpredictable problem with law enforcement—and *Department of Commerce*, which involved a predictable response to a predictable enforcement of the law. *Dep't of Comm.*, 139 S. Ct. at 2565-66. Moreover, there is no comparable issue in this case to the deprivation of funding that would follow to

noncitizen households in *Department of Commerce* to provide a concrete, economic harm. 139 S. Ct. 2565-66.

Given the remoteness of her fears, and the number of possible, but improbable, intervening events that must occur before those fears can be realized, this plaintiff has failed to demonstrate a concrete, particularized and—especially—imminent, injury, all the more because the Board has not formally adopted the press release.  Dkt. 1, ¶ 54.

Furthermore, Benn's subsequent move out of Rensselaer powerfully undercuts her assertion of standing.  Plaintiffs argue that she retains the right to pursue a remedy for the fears that she experienced while a resident of the county that caused her to move, but that argument strains standing well past its breaking point.  The Board never approved the policy she attacks, and thus any fears or discouragement she experienced as a result of the county's policy were entirely of her own making, and she could have freely registered to vote—even at the DMV—without exposing herself to the risk of her fears being realized until the policy was adopted, if it ever were.  Dkt. 1, ¶ 54.  The hypothetical possibility of the policy being formally adopted some day is insufficient to confer standing on this plaintiff.

Benn's assertion of standing thus amounts only to a disagreement with the county's policy.  It is well past debate that such policy disagreements cannot confer standing. *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) ("The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements."). This plaintiff has thus soundly failed to establish standing.

## 2.  <u>THE ORGANIZATIONAL PLAINTIFFS.</u>

An organization seeking to establish standing to challenge an act of local government must show:  (1) an imminent "injury in fact" to itself as an organization (rather than to its members) that is "distinct and palpable"; (2) that the injury is "fairly traceable to" the

complained of conduct; and (3) that a favorable decision would redress its injuries. *Centro de la Communida Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017).

The injury in fact requirement is met so long as there is "a 'perceptible impairment' of an organization's activities . . . ." *Nnebe v. Daus*, 644 F.3d 147, 157 (2d Cir. 2011). This includes when the organization "divert[s] money from its other current activities to advance its established organizational interests . . . ." *Centro*, 868 F.3d at 110. However, the proposed injury still must be both concrete and imminent. *See id.* at 109. Where a party seeks review of a purported First Amendment violation prior to its being enforced, "somewhat relaxed standing and ripeness" rules apply. *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013).

Defendants' arguments against the organizational plaintiffs' standing hinge largely on *Young Advocates for Fair Education v. Cuomo*, 359 F. Supp. 3d 215 (E.D.N.Y. 2019) ("*YAFFED*"). That case analyzed the standing of an advocacy group that had diverted resources toward opposing a piece of legislation, and found that standing was lacking, because if all an advocacy organization needed to attain standing was to spend money opposing a piece of legislation, organizational standing would essentially be infinite. *Id.* at 231-32. In particular, the Eastern District distinguished *Centro*'s holding because in *Centro* the plaintiff physically needed to spend resources to collect and organize laborers, which became more difficult and expensive in the wake of the challenged and active legislation that prohibited individuals from stopping motor vehicles to solicit employment. *Id.* at 232 (citing *Centro*, 868 F.3d at 110-11). Defendants ask this Court to make the same distinction.

The organizational plaintiffs, by contrast, distinguish *YAFFED* because they argue that the plaintiff organizations all engage in voter registration and voter engagement. They argue

that they must spend additional resources registering voters to overcome voter intimidation and fear from the press release.

This argument assumes that voters in Rensselaer in the communities that the organizational plaintiffs serve:  (1) have read the press release; (2) have come to the identical conclusion as Benn that should this information be passed on to ICE, the agency would erroneously detain lawful citizens as a result; (3) have not decided to simply register to vote though any other means than the DMV, which faces no impediment or specter of ICE receiving the information; and (4) would have already otherwise registered to vote but for the previous three assumptions.

Plaintiffs' argument practically defines the word speculative, and the complaint's attempts to render the hypothetical real only illustrate their lack of standing.  Plaintiff New York Immigration Coalition only points to one "strategy meeting" that one of its "member groups"  has hosted to discuss how to work around Rensselaer's proposed policy.  Dkt. 1, ¶ 79.  Plaintiff Common Cause/New York's allegation of harm amounts to the fact that its "members have the opportunity to register to vote or to update their voter registration information" when they interact with the DMV, which exposes them to the risk of their information being disclosed to ICE.  *Id.* ¶ 80.  Its allegation of harm is thus simply that the press release exists and is no different from plaintiff Benn's allegations above that did not confer standing.

Plaintiff Citizen Action's allegation that its "mission of holding government accountable depends on the ability of eligible persons to make their voices heard at the voting booth," which demands spending more resources on voter education and engagement, similarly fails to confer standing.  Dkt. 1, ¶ 81.  Even the language of this plaintiff's allegations expose the forward-looking nature of the complaint, because it notes that the press release "*will* hamper

[this plaintiff's] voter engagement efforts and require it to divert resources to counteract the impact of [d]efendants' actions by helping more voters register." *Id.* (emphasis added). It does not allege that it has already diverted those resources, but that it anticipates that it will have to. This is not an imminent injury, and this argument cannot confer standing.

Finally, Community Voices Heard, Inc. has failed to present a colorable argument of standing, because it acknowledges in the complaint that it does not do voter registration work in Rensselaer. Dkt. 1, ¶ 23. Its arguments that it "*will be* required to divert resources to educate citizens . . . about the new policy, its limits, and its implications for voters *in nearby areas*" is purely speculative, especially because no constituent that they work with will actually be affected by the policy. *Id.* ¶ 83 (emphasis added).

Moreover, the expenditures that the organizational plaintiffs actually do allege, such as New York Immigration Coalition's "strategy meeting," were only incurred because of that plaintiff's anticipating the actions of third parties in deciding whether to register to vote through the DMV after the press release's issuance. Dkt. 1, ¶ 79. That anticipatory action is made all the more speculative because it depends on the hypothetical adoption of the press release's proposed policy and the even more hypothetical outcome of ICE making a mistake in enforcing immigration law. In light of the remoteness of the injury, this Court cannot find that plaintiffs have standing to sue.

Indeed, given the lack of any limiting principle to plaintiffs' organizational standing arguments, finding standing for the organizational plaintiffs in this context would functionally confer the power to establish standing to the organizational plaintiffs themselves. If an organizational plaintiff's choosing to spend money—rather than needing to—in opposition of a law opens the doors of the federal courts, the longstanding principle that mere disagreement

11

with a statute alone cannot confer standing would vanish so long as an organizational plaintiff were willing to open their coffers first. *Hollingsworth*, 570 U.S. at 704.

If plaintiffs presented a more imminent danger than a press release outlining an unadopted policy, this Court might have approached this case differently. If they brought a more concrete theory of recovery than a "threat" rooted in ICE mistakenly detaining lawful citizens, this too might have compelled a different outcome. But in this context, with plaintiffs making the independent choice to preemptively respond to Rensselaer's press release and relying on such an abstract theory of harm, this Court cannot find organizational standing.

Also fatal to plaintiffs' standing arguments is that the injury they allege is not "fairly traceable" to the press release. The press release was just that, and plaintiffs themselves allege that it lacks force, has not formally been adopted by the Board, and is opposed by the other of the Board's two commissioners. Dkt. 1, ¶ 54. Whatever resources plaintiffs have diverted, they have therefore done so at their own choosing and for their own purpose, and they cannot argue that they were forced to expend these resources by a toothless proposal of policy. Thus, organizational standing does not exist on this alternative basis.

Alternatively, plaintiffs argue that they have associational standing to bring their claims against defendants. A plaintiff organization has associational standing if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living*, 675 F.3d 149, 157 (2d Cir. 2012). Plaintiffs have not put forward any individual member plaintiff that would have standing to sue in their own right. For the same reasons discussed above regarding Benn's standing, they have a difficult road in establishing standing for any member before the Board shares any

election materials with ICE.  Accordingly, plaintiffs have failed to prove that any member of their ranks has standing to sue, and the complaint must be dismissed without prejudice.[4]

**V.    CONCLUSION**

The defining feature of this case is haste.  Nearly before the ink could dry on the Green Light Act's signature, Rensselaer had issued a press release that it could neither support nor enforce.  What good it hoped to accomplish through that empty gesture is unclear to this Court even today.

Not to be outdone, plaintiffs fired back with a lawsuit relying on tenuous and expansive interpretations of the constitutional principles of standing.  Perhaps, had they waited for any actual policy to take effect, and had they brought forward a proposed plaintiff who had a less tenuous grasp at standing than those it mustered, this Court might have examined its claims and taken a careful look at the proposed policy.  Instead, plaintiffs leapt at the sound of Rensselaer's rattling sabers and charged ill-prepared into this Court.  Their zeal is commendable, but it cannot confer upon this Court the authority to hear this case. Defendants' motion to dismiss the complaint in its entirety must thus be granted.

Therefore, it is

ORDERED that

1.  Defendants' motion to dismiss is GRANTED;

2.  Plaintiffs' complaint is DISMISSED WITHOUT PREJUDICE; and

3.  Campaign Legal Center's motion for leave to file an amicus curiae brief is DENIED as moot.

The Clerk of Court is directed to enter judgment accordingly and close the file.

---

[4] Because this Court finds that it lacks standing over plaintiffs' claims, it lacks jurisdiction over this complaint and need not—and cannot—consider any other arguments advanced by the parties.

David N. Hurd
U.S. District Judge

Dated:  November 25, 2019
        Utica, New York.